**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY DIAZ, et al., | : | CIV. NO. 3:24-CV-00856 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| DARREN GELBER, et al., | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.     Factual Background and Procedural History

This *pro se* prisoner legal malpractice claim, which comes before us for consideration of two motions to dismiss, (Docs. 32, 33), represents Anthony Diaz's latest effort to blame others for his current legal dilemmas. The plaintiff, Anthony Diaz, is an inmate who is currently serving a federal sentence following his conviction on federal mail and wire fraud offenses. These convictions arose out of Diaz's involvement in a complex fraud scheme that victimized innocent investors. As the Court of Appeals explained when it affirmed Diaz's conviction and sentence:

> Diaz was a financial planner. His clients were ordinary people who wanted to save for retirement or their kids' educations. Diaz promised to put their money into safe investments. Instead, he chose risky ones that netted him higher commissions. When those investments tanked, Diaz's clients lost lots of money. Those losses forced many to delay

> retirement. Some had to sell their homes. Meanwhile, Diaz took exotic vacations, built a pool, and drove a Jaguar.
>
> Diaz's scheme was complex. Many of the investments he chose were so risky that ordinary people, like his clients, are barred from them. So he tricked his clients into signing blank documents and then forged their information to make them look qualified. One client was on unemployment, getting about $400 per week. Diaz wrote that her annual income was $102,000.
>
> Diaz's lies kept things going for close to a decade. Several companies fired him. Each time, Diaz told his clients that he had left for their benefit. Regulatory agencies started investigating him, and a professional organization for financial planners suspended him. Again, Diaz lied or said nothing to his clients.
>
> Finally, the jig was up. The jury convicted him of seven counts of wire fraud and four of mail fraud, and the judge sentenced him to 17 ½ years in prison.

United States v. Diaz, No. 21-1709, 2022 WL 4298338, at *1 (3d Cir. Sept. 19, 2022).

Unfazed by the fact that his conviction was affirmed on appeal, Diaz filed a *pro se* motion to vacate his conviction and sentence, which sought to lay the blame for his conviction at the feet of his counsel, Darren Gelber, Joshua Lowther, and Murdock Walker. In this motion, Diaz raised claims which now lie at the heart of the instant case, arguing that his conviction and sentence were not a product of the clear evidence of his guilt, but rather were a function of ineffective assistance by his trial and sentencing counsel.

The district court, Mannion, J., expressly considered, and explicitly rejected, Diaz's challenges to the effectiveness of his counsel.  Thus, with respect to Attorney Gelber, who served as trial counsel for Diaz, the court found that: "[Diaz] can neither show his trial counsel was deficient nor that he was prejudiced by trial counsel's conduct and his claim based on ineffective assistance of trial counsel will be denied for want of merit." United States v. Diaz, No. 3:16-CR-122, 2024 WL 3678374, at *5 (M.D. Pa. Aug. 6, 2024). The district court went on to observe that: "It is noteworthy that, on the court's view, Mr. Gelber was one of the most competent trial counsel this court has had appear before it in a complicated criminal trial." Id. at *5, n.3. The court also held that Diaz's claim that his counsel was inattentive at trial was "preposterous," finding instead that: "To the contrary, his counsel was notably well prepared and continually vigilant." Id. at *5, n.2.

The district court reached similar conclusions with respect to Attorneys Lowther and Walker, who represented Diaz at his sentencing and on appeal. Once again, the court flatly rejected Diaz's claims that he had been ineffectively represented by his counsel. With regard to the performance of counsel at Diaz's sentencing, the court rejected Diaz's claim that counsel was ineffective in stipulating to a loss figure for sentencing purposes. On the facts adduced at trial, the court deemed this argument risible, explaining that:

3

As a result of [Diaz's] misrepresentations his clients reasonably anticipated that they would enjoy the benefits of investing their savings in low-risk highly liquid investments. Instead, they received only the detriment of investing in high-risk illiquid investments, which [Diaz] intentionally funneled their money into to secure higher commissions for himself. Accordingly, [Diaz's] clients were victims, his sentencing counsel was not ineffective for stipulating to a loss lower than actually proveable and his claims to the contrary will be denied for want of merit.

Id. at *6.

The district court also addressed Diaz's complaints about the performance of his counsel on appeal. On this score, the court explained that:

To the extent that [Diaz] still argues his appella[te] counsel was ineffective in his reply brief such arguments are improperly raised and need not be considered by the court. See Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992) (A moving party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief."); See also Judge v. United States, 119 F. Supp. 3d 270, 284 (D.N.J. 2015). (This doctrine applies not only in standard civil suits, but is also applicable to reply briefs in habeas proceedings as "[b]asic fairness requires that an opposing party have a fair notice of his adversary's claims, as well as an opportunity to address those claims.")

Nonetheless for the sake of good order the court will discuss why [Diaz's] ineffective assistance of appella[te] counsel claim also fails on the merits. [Diaz] argues that his counsel did not raise multiple meritorious claims on his direct appeal. Specifically, he argues that his counsel failed to appeal the admissibility of two government exhibits, alleged hearsay testimony regarding those exhibits, and an additional list of documents that he claims should have been excluded under Federal Rule of Evidence 404. However, [Diaz] does not explain why these exhibits and testimony were inadmissible and does not even identify the disputed additional documents let alone explain how they prejudiced him.

4

Id. at *7.

The court went on to discuss how these documents, which reflected Diaz's checkered history of regulatory non-compliance, were relevant, admissible, and not subject to legitimate challenge on appeal, stating that:

> Assuming that the unidentified documents in question related to the multiple regulatory proceedings [Diaz] concealed from his clients, these documents were not admitted in violation of Rule 404. Before trial [Diaz] filed a motion *ad limine* to exclude these documents on the basis they constituted evidence of prior bad acts in violation of Rule 404. (Doc. 98.) However, the court denied this motion finding that these documents constituted direct evidence of [Diaz's] scheme to defraud his clients, who testified that [Diaz] lied to them about his professional standing and had they known the truth would not have invested their money through him, and thus were beyond the scope of Rule 404. (Doc 101.)

> Moreover, even if this evidence was wrongly admitted, such an error would be harmless because a jury still would have convicted [Diaz] based on how he misled his clients about the nature of their investments. The fact [Diaz] also mislead his clients about his professional standing only added to the government's overarching case that he lied to his clients leading them to lose most if not all their life savings. Accordingly, [Diaz's] appella[te] counsel was not deficient for not raising these issues on direct appeal nor did their conduct prejudice [Diaz] and had [Diaz] properly raised this claim it too would be denied for want of merit.

Id.

Undeterred by the fact that the court has explicitly rejected his attacks upon the performance of his counsel, in the instant case Diaz, acting on his own behalf and on behalf of his spouse, repeats these allegations in this lawsuit, garbing them

5

in the guise of legal malpractice and breach of contract claims lodged against his trial, sentencing, and appellate counsel. (Doc. 1). As recompense for these alleged professional errors, Diaz demands $6,000,000 in compensatory damages from the defendants. (Id.) However, Diaz has provided no certification explaining that a legal expert has attested to a breach of some professional duty by his former counsel, a legal prerequisite in Pennsylvania for the pursuit of such claims.

Given this oversight, the defendants have now moved to dismiss Diaz's complaint, contending that these claims fail because Diaz has not provided a certificate of merit in support of his professional negligence allegations as he is required to do under Pennsylvania law to pursue malpractice and malpractice-related claims. (Docs. 32, 33). Confronted with this legal challenge to his complaint, Diaz has filed a document, which purports to address the requirements of Pennsylvania law that a malpractice complaint be accompanied by a certificate of merit stating that an exert has found that the relevant prevailing professional standards were not satisfied. (Doc. 29-1.) However, this certificate merely states "that the Plaintiffs' [sic] believe that there is no need for Expert Testimony  in the instant case-as the failures are well-settled as to fall under both Attorney Malpractice and Breach of Contract so as to have placed even laypersons on notice that the standards of care have been breached." (Id.) Diaz's certificate makes no effort to reconcile this cursory statement that the errors of counsel are so patent that no expert testimony is needed

with the prior express findings of the court that counsel did not breach any professional duty owed to the plaintiff in the course of their defense of Diaz at trial, sentencing, and on appeal.

It is against this backdrop that we consider the motions to dismiss Diaz's complaint. For the reasons set forth below, these motions will be GRANTED.

## II.    <u>Discussion</u>

### A. <u>Motion to Dismiss—Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no

8

more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather,

in conducting a review of the adequacy of a complaint, the Supreme Court has

advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for
overcoming a motion to dismiss and refined this approach in Iqbal. The
plausibility standard requires the complaint to allege "enough facts to
state a claim to relief that is plausible on its face." Twombly, 550 U.S.
at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
when the factual pleadings "allow[ ] the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." Iqbal,
129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
This standard requires showing "more than a sheer possibility that a
defendant has acted unlawfully." Id. A complaint which pleads facts
"merely consistent with" a defendant's liability, [ ] "stops short of the
line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must

plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Twp.,

629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. **Pennsylvania's Certificate of Merit Requirement.**

Under Pennsylvania law, when parties bring claims that licensed professionals deviated from an acceptable professional standard, the plaintiff typically must file

with the complaint, or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party. This requirement is imposed upon parties bringing professional negligence claims by Pa.R.C.P. No. 1042.3 ("Rule 1042.3") which provides in pertinent part as follows:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a professional liability claim. Liggon–Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011); Iwanejko v.

Cohen & Grigsby, P.C., 249 F Appx. 938, 944 (3d Cir. 2007); Ramos v. Quien, 631 F.Supp.2d 601, 611 (E.D. Pa. 2008); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D. Pa. 2008) (noting that Pennsylvania federal courts "have uniformly held that the COM requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court").

A plaintiff cannot evade this substantive rule by casting his complaint, in part, as a breach of contract claim. Quite the contrary, Rule 1042.3's requirement has been expressly applied by federal courts to cases, like the instant lawsuit, which involve claims of breach of contract where those breach of contract allegations are grounded in the alleged failure of a licensed professional to perform in accordance with the skill and care required of the profession. See Perez v. Griffin, 304 F. App'x 72, 75 (3d Cir. 2008) (breach of contract claim against attorney, Rule 1042.3 applied) citing Varner v. Classic Cmtys. Corp., 890 A.2d 1068, 1074 (Pa. Super. Ct. 2006) (explaining that "it is the substance of the complaint rather than its form" that controls whether a claim is for professional liability and whether a certificate of merit is required).

This requirement of state law also applies with equal force to counseled complaints, and to *pro se* malpractice actions brought under state law. See Hodge v. Dept. of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen

& Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839,

2009 WL 1770146 (M.D. Pa. June 22, 2009). Therefore, Diaz's status as a *pro se*

litigant cannot excuse him from compliance with the substantive state law when

bringing state law claims grounded in allegations of malpractice. Id. Thus, to the

extent that Diaz wishes to bring a malpractice action, or a breach of contract claim

premised on the breach of some professional responsibility, a failure to comply with

Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can

be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either
> with the complaint or within sixty days after the filing of the complaint
> in any action asserting a professional liability claim 'based upon the
> allegation that a licensed professional deviated from an acceptable
> professional standard.' " Smith v. Friends Hospital, 928 A.2d 1072,
> 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal
> courts have found that this rule constitutes state substantive law and
> thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v.
> Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See
> Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing
> Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which
> held that an analogous New Jersey statute was substantive law);
> Velazquez v. UPMC Bedford Mem'l Hosp.., 328 F.Supp.2d 549
> (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file
> a required certificate of merit. See, e.g., Stroud v. Abington Mem.
> Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498
> F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun.
> Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that
> "failure to submit the certificate is a possible ground for dismissal by

the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

It is against these legal guideposts that we assess the sufficiency of Diaz's claims.

## C. **The Motion to Dismiss Will Be Granted.**

This case involves a remarkable set of circumstances. Anthony Diaz's efforts to blame his counsel for his conviction have already been carefully considered and emphatically rejected by this court when it denied Diaz's motion to vacate conviction and sentence. United States v. Diaz, No. 3:16-CR-122, 2024 WL 3678374 (M.D. Pa. Aug. 6, 2024). In denying this motion, the court considered the performance of counsel through a constitutional lens that closely parallels the standards governing legal malpractice claims.

Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). Thus, at the outset, Strickland

requires a petitioner like Diaz to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. As the Supreme Court has observed: A petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Diaz has already plainly failed in his attempts to meet this legal benchmark during his post-conviction litigation. Quite the contrary, the district court found that counsel's performance either comported with or exceeded professional norms stating in part that: "It is noteworthy that, on the court's view, Mr. Gelber was one of the most competent trial counsel this court has had appear before it in a complicated criminal trial." Diaz, 2024 WL 3678374 at *5, n.3. Notwithstanding these explicit findings, Diaz invites us to allow his claims to proceed forward based solely upon his subjective, and thoroughly discredited insistence that: "there is no need for Expert Testimony  in the instant case-as the failures are well-settled as to fall under both Attorney Malpractice and Breach of Contract so as to have placed

16

even laypersons on notice that the standards of care have been breached." (Doc. 29-1). This course of action, if embraced by us, would treat Judge Mannion's prior findings as nullities and would force the defendants to once again litigate an unsubstantiated professional misconduct claim which has not been advanced in a manner consistent with the controlling substantive law of Pennsylvania.

We will decline this invitation and instead dismiss this complaint. In doing so, we first find that Diaz's malpractice and breach of contract claims all fundamentally relate to what the plaintiff contends was a breach of professional norms by his former attorneys. Therefore, Diaz may not avoid dismissal of the complaint by attempting to cloak some claims in the rubric of a breach of contract action since the gist of all these claims, whether cast as malpractice or breach of contract, is "defendants' professional representation of him, and thus a COM is required." Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347, 349–50 (3d Cir. 2010) (citing Gorski v. Smith, 812 A.2d 683, 694 (Pa.Super.Ct.2002); Pa. R. Civ. P. 1042.3.)[1]

---

[1] In addition, to the extent that Diaz argues that he has one freestanding breach of contract claim against counsel relating to an $8,500 transcript fee which does not entail malpractice claims, the simple response to this averment is that, if all Diaz has is an $8,500 state law breach of contract claim then the plaintiff may not assert federal jurisdiction over these state claims, since we can only exercise federal jurisdiction over such state law claims in "*civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between*– **(1)** citizens of different States." 28 U.S.C. § 1332(a)(1) (emphasis added).

We further conclude that Diaz may not avoid the requirements of Rule 1042.3 by relying upon his status as a *pro se* litigant. Quite the contrary, by its terms, the rule applies to both "the attorney for the plaintiff, or the plaintiff if not represented." Therefore, Diaz is obliged to comply with the rule if he wishes to pursue these claims.

And he has not. Diaz's filings plainly do not meet Rule 2042.3's general requirement that an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards. Pa.R.C.P. No. 1042.3(a)(1). Nor can he, given the explicit findings of Judge Mannion that counsel's performance met and exceeded prevailing professional standards in the criminal defense function.

Diaz cannot save this facially deficient certificate of merit by resorting to Rule 1042.3(a)(3)'s narrow exception to the certificate of merit requirement for cases where "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Id. This contention fails for at least two reasons. First, on the unusual circumstances of this case, where the court has previously made explicit findings regarding the performance of counsel during Diaz's criminal post-conviction litigation, we conclude that Diaz cannot reduce those findings to legal

nullities simply through his stubborn insistence that the errors of counsel would be obvious to a layman. Rather, on these facts, Diaz must do more. Before he can take refuge behind Rule 1042.3(a)(3), Diaz must, on appeal, successfully set aside the prior judicial findings that counsel met and exceeded prevailing professional norms. Until he does so in our view relief under this provision of the rule is unavailable to the plaintiff.[2]

Moreover, under Pennsylvania law, which governs our consideration of this case, Diaz's *pro se* status effects his ability to self-certify that there is no need for expert witness testimony to support a professional malpractice claim. In fact, Pennsylvania courts have often sustained the dismissal of *pro se* complaints that attempted to rely upon such self-certification when it was apparent that expert testimony would be necessary to sustain a professional misconduct allegation. See e.g., Garcia v. Howell, No. 800 C.D. 2018, 2019 WL 3986331, at *4 (Pa. Commw. Ct. Aug. 23, 2019) (dismissing *pro se* malpractice claim based upon Rule 1042.3(a)(3) self-certification as frivolous); McCool v. Dep't of Corr., 984 A.2d 565, 571 (Pa. Commw. Ct. 2009) ("McCool's certificates of merit stated that expert

---

[2] We note that the unique, and uniquely compelling facts of this case, where there have already been direct findings that counsel satisfied prevailing legal norms, distinguishes this case from instances where it has been suggested that a dismissal which relies upon a Rule 1042.3(a)(3) notice is inappropriate.

testimony of an appropriate licensed professional was unnecessary to prosecute his claims. He is wrong."). As one court has aptly observed, a *pro se* plaintiff:

> alone cannot simply aver that his claims are understandable to a layperson. Appellant's certificates of merit were not signed by an attorney. As such, the certificates of merit needed to include written statements from an appropriate licensed professional; the Rule does not allow a *pro se* party to certify that expert testimony is unnecessary. See Pa.R.C.P. 1042.3(e).

Baez v. Correct Care Sols., Inc., 245 A.3d 1059 (Pa. Super. Ct. 2020). In fact, Rule 1042.3(e) speaks directly to this situation where a *pro se* litigant attempts to file a certificate of merit which merely avers that no expert is needed. In terms that are equally applicable here, the rule provides that: "If a certificate of merit is not signed by an attorney, the party signing the certificate of merit shall, in addition to the other requirements of this rule, attach to the certificate of merit the written statement from an appropriate licensed professional as required by subdivisions (a)(1) and (2)." Pa.R.C.P. No. 1042.3(e). Diaz plainly has not satisfied this requirement of the rule.

Simply put, Diaz has not complied with controlling Pennsylvania law as it relates to professional malpractice claims. Further, he has not provided a valid excuse for this non-compliance, and he has provided no justification that would warrant ignoring this court's prior findings that his prior counsel met or exceeded prevailing professional standards of competence. Therefore, he cannot avoid

dismissal by simply asserting his own subjective, and discredited, belief that the errors of ounsel are so obvious that no expert is needed.

Accordingly, he has failed in his latest attempt to blame others for his current conviction and sentence.  Rather, Diaz's present circumstances are a function of his greed and mendacity. Therefore, rather than pursuing feckless efforts to blame others Diaz would be well advised to consider Shakespeare's wisdom that: "The fault . . . is not in our stars, but in ourselves." <u>Julius Caesar</u>, Act 1, Scene 2, Lines 140-41.

## III.   <u>Conclusion</u>

For the foregoing reasons, defendants' motions to dismiss, (Docs. 32, 33), will be GRANTED. [3]

An appropriate order follows.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: March 21, 2025

---

[3]  We note though that: "Involuntary dismissal under Rule 1042.3 is not a dismissal with prejudice, however." <u>Donnelly v. O'Malley & Langan, PC</u>, 370 F. App'x 347, 350 (3d Cir. 2010) (citing <u>Moore v. John A. Luchsinger, P.C.</u>, 862 A.2d 631, 634 n. 3 (Pa.Super.Ct.2004)).